## NORTHUMBERLAND COUNTY.

JANUARY TERM, 1882, No. 427.                    APRIL 26TH, 1882.

# Clement's Appeal.

1. Where it is manifest on the face of a bond that there was a clerical error in inserting the amount of the penalty, equity will reform it as against the surety by substituting the amount intended, without such indubitable proof of mistake as is required in ordinary cases.

2. The Court ordered an administrator to sell real estate for the payment of the debts of the decedent, and directed a bond to be filed in the sum of $800. By mistake of the clerk, a penalty of $8 was inserted instead of $800, and the bond was executed in this form by the administrator and his surety.   Upon the confirmation of the administrator's account, there was a deficit, and the administrator *de bonis non* of the estate filed a bill in equity against the representatives of the administrator and his surety, asking for a reformation of the bond.   There was some conflict of testimony as to the knowledge, on the part of the surety, at the time of the execution of the bond, of the amount intended to be inserted.   *Held*, that the bond could be reformed by substituting in the penalty the sum of $800 instead of $8.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal of Ira T. Clement from the decree of the Court of Common Pleas of *Northumberland County*, confirming the report of a master recommending the reformation of a bond executed by Clement as surety.

October 19th, 1879, Peter ·H. Snyder, administrator *de bonis non* of Catharine Thurston, deceased, filed a bill in equity in the Court below against Ira Shipman, administrator of Abraham Shipman, deceased, setting forth that Catharine Thurston, in May, 1877, was seised of certain real estate, and that letters of administration upon her estate were granted to Abraham Shipman, who presented a petition to the Orphans' Court asking for an order to sell the said real estate for the payment of debts; that, January 9th, 1878, the Orphans' Court ordered him to sell the said real estate, and directed him to enter into bond in the sum of $800, and approved of Ira T. Clement as surety; that, on January 10th, 1878, the administrator and surety executed a bond to the Commonwealth, but that the scrivener who drew it, by mistake, omitted the word "hundred" after the word "eight" in the penal sum, so that it purported to be a bond in the penal sum of $8; that the administrator and surety, intending to comply with the order of the Court, by executing a bond in $800, executed the bond as drawn without perceiving the mistake; that, under an order of the Court, of January 18th, 1878, reciting that a bond in $800 had been filed, the administrator sold the real estate, which sale was confirmed, and a deed was made to the purchaser, and $720.19 were received by the administrator; that Abraham Shipman, the administrator, died, and the defendant, Ira Shipman, was appointed his administrator; that Abraham Shipman died insolvent, having in his hands $650.51, proceeds of the sale of the said realty; that the complainant was appointed administrator *de bonis non* of Catharine Thurston, and had demanded the said sum from Ira Shipman and Clement. The bill prayed that the bond be reformed so as to read $800 instead of $8, that Clement pay the sum of $650.51, and further relief.

The answer of Ira T. Clement averred that, "I did not intend to sign with the said Abraham Shipman, as principal, any bond other than such as I did sign and execute as surety for him, to wit, a bond in the sum of $8."

In response to specific interrogatories, Clement answered:

"I cannot state of my own knowledge, or from information, remembrance, or belief, whether at the time I signed the bond as surety for Abraham Shipman, I knew that I was signing such a bond to enable him, as administrator of Catharine Thurston, to obtain an order of the Orphans' Court to sell real estate of the said Catharine Thurston, deceased. At the time said bond was signed, Abraham Shipman merely stated 'that he had a small estate to settle up, that did not amount to anything; that he had a bond

[Clement's Appeal.]

to give,' and asked me to go on it as surety, but have no recollection whether any sum was mentioned."

Before the examiner appointed to take the testimony, *Uriah Bloom* testified, *inter alia* :

"This bond was drawn at the request of Abraham Shipman, and at the time of drawing it he signed his name to it, and told me that he would leave it in my possession for Mr. Clement to sign, that Mr. Clement was to go on as bail. In the course of several days, it may have been a week, I don't remember exactly, Mr. Clement came in and told me that Mr. Shipman had requested him to sign a bond in the Thurston estate. At the time he came in, I was working at a desk standing in the corner near the door, and the bond was in a package of papers lying on the table, which was behind the railing. He told me that Mr. Shipman had requested him to sign a bond in the Thurston estate. I told him that the bond was in the package lying on the table ; he walked to the table and took up the package and took out the bond. Whilst he was doing that, he remarked that he believed the bond was to be in the sum of $600. I told him that it was a bond for $800, that the Court had so ordered it. He took the bond to another desk, that was standing in the office against the railing, too, and there signed it without my going over to him or leaving my work. He said, also, at the time that I told him that the bond was to be in $800, that he did not so understand it at the time that Mr. Shipman requested him to sign it ; that he, Mr. Shipman, had told him it was only to be for the amount of $600. That is all I can recollect of it. . . .

" A. My intention was, and I believe it to have been Mr. Clement's intention, to sign a bond in the sum of $800.

" Q. Was or was not the drawing and the executing of the bond in the sum of eight a mistake?

" A. It was a mistake.

" Q. Did you or did you not, in drawing the bond, omit the word 'hundred' by mistake?

" A. I omitted the word 'hundred' by mistake in drawing the bond.

" Q. Did you, at the time of drawing the bond and at the execution of the bond, perceive the mistake?

" A. I did not.

" Q. Did Mr. Clement?

" A. I can't say that; he did not say anything."

Another witness corroborated this testimony to some extent, and a claimant against the estate testified that, after the administrator of Abraham Shipman had filed his account, and it had been confirmed, Clement said to him that he ex-

pected he would have to pay the claim, and that he would pay it without further trouble.

Clement testified that the above conversation concerning the amount of the bond did not occur.

The Court referred the bill, answer, and testimony to E. W. Greenough, as master, who reported, *inter alia :*

"Equity will reform a written instrument only, that it may correspond with and carry out the original intentions of the parties, and it is generally much more difficult to establish the intention of a surety than of a principal obligor; and, moreover, as the surety rarely is the recipient of as great benefit as the principal, it is but just that the greatest care should be exercised in binding him to fulfil the contracts of his principal to show what were his intentions when he signed the instrument in question.

"Equity will set up a lost bond against a surety. The reason is, that the surety is not discharged by the loss of the bond, and the Court only relieves against the accident by setting up the evidence of the debt: Brandt on *Suretyship and Guaranty*, section 118, Kerney's Administrators *v.* Kerney's Heirs, 6 Leigh (Va ), 478 ; East India Co. *v.* Boddam, 9 Vesey, 464 ; also, ' where the contract does not express the agreement or intention of the parties to the injury of the obligee, and this is clearly made to appear, equity will reform the instrument against sureties as principals : ' Brandt on *Suretyship and Guaranty*, section 118; Olmstead *v.* Olmstead, 38 Ct., 309 ; Besore *v.* Potter, 12 S. & R., 154 ; and again, under same section of Brandt on *Suretyship and Guaranty,* we find as follows : 'A trustee, having in his hands funds arising out of the property sold under decree of Court, became delinquent, and having wasted the fund died intestate, having before committed breaches of his bond, for which both he and his sureties would have been liable at law if he had lived, a claimant of the fund in the hands of the trustee could not place himself in a position to proceed at law on the bond because of the death of the trustee. *Held,* equity would afford him relief on the bond against the sureties. There was a clear right against the sureties which could not be enforced at law because of the accident of the death of the principal, and the fact that there was a right, and no remedy at law, was sufficient alone to give equity jurisdiction.' The law on this subject was well and concisely stated by the Court as follows : 'A court of equity will do nothing to extend the liability of securities beyond the clear intent and import of their contract. But if to such an extent they cannot at law be held liable by reason of fraud, accident, or mistake, a court of equity, to prevent a failure

of justice, will interfere and enforce the execution of their contract according to their obvious meaning and design:' Brooks *v.* Brook, 12 Gill & Johns. (Md.), 306. One need go no further for authority for assuming that a surety, under certain conditions, stands on precisely the same footing as his principal, and the only question that can remain is, whether those conditions exist in this case or not. Can a security to an administrator bond be held to the express terms of an order of Court? He is no party to the petition, it is true, but his name is presented to the Court as surety, and if he afterwards sign the bond, it may certainly be presumed, with perfect justice, that he willingly makes himself a party to the whole transaction. In the absence, however, of any authority on this point, if the intention of Ira T. Clement, surety in this case, can be satisfactorily established by parol evidence of what occurred at the execution of the bond, equity will surely be warranted in interfering to enforce the said bond 'according to its obvious meaning and intent.' Parol testimony of what occurred 'at or about the time' of execution can be offered to correct a mistake in a written instrument : Renshaw *v.* Gans, 7 Barr, 117. . . . . . The master has already found, as a matter of fact, that the weight of the evidence is against Clement, as to whether he was informed at the time of the execution of the bond, what amount the Court had fixed as the consideration in the said bond. Clement does not deny anywhere that he knew he was signing a bond in the Thurston estate. He nowhere states what his intentions were as to the bond than that he 'intended to sign no other bond than the one he did sign.' This is his statement in his answer to complainant's bill, and again in his answer to complainant's interrogatories, and also in effect in his testimony before the examiner. These facts being established, it is the opinion of the master, as already previously stated, that Ira T. Clement signed the said bond believing it to be drawn in the sum of $800, and could therefore have intended to sign a bond in no other sum than the sum ordered by the Court. In only one way is it possible to suppose that Clement, being informed of the sum ordered by the Court, intended to sign a bond drawn in any other sum, and that is by supposing that he discovered the sum in which the bond was actually drawn, and concealed the knowledge of it; and even were this so, and proven, it would only change the case from one of mistake to one of fraud. Believing, then, that Ira T. Clement intended to sign a bond drawn in accordance with the order of Court, a court of equity would not 'extend his liability' by reforming the mistake made by the scrivener, because, had there been no

mistake made, he would unquestionably be bound in law for the amount due the Thurston estate; and, if equity does not interfere to correct the mistake, it will be impossible to enforce the bond 'according to its obvious meaning and intent.'

" Your master, therefore, for reasons set forth, respectfully recommends that a decree be made that the bond be reformed against Ira T. Clement, respondent, in such manner as shall afford the relief prayed for by the complainant, Peter H. Snyder, in his bill in equity."

The defendant, Clement, excepted to these findings.

The Court below, ROCKEFELLER, P. J., dismissed the exceptions, confirmed the report, and decreed that the bond be reformed by inserting the word " hundred " after the word " eight " in the penal sum, filing the following opinion :

" The Court ordered a bond to be given in the sum of eight hundred dollars, and approved of Mr. Clement as bail.   In .drawing the bond the clerk, by mistake, filled up the blank by inserting ' eight dollars' instead of ' eight hundred dollars.'   It is clear from the evidence, and the master so finds, that the parties intended to execute a bond for eight hundred dollars.   The mistake of a scrivener in preparing a writing may be shown by parol evidence and the instrument reformed accordingly.   Such reformation is an exercise of the equity powers of all our Courts.   Equity relieves against mistake as well as against fraud.   It is not pretended there was any fraud in this case, but there was a plain mistake."

Clement then appealed, assigning that the Court erred in dismissing the exceptions and confirming the report, in reforming the bond, in assuming that the parties intended to execute a bond for $800, and in stating broadly, in a case where the intention of the parties is disputed and the evidence conflicting, that " the mistake of a scrivener in preparing a writing may be shown by parol evidence, and the instrument reformed accordingly," and that " such reformation is an exercise of the equity powers of all our Courts."

*S. P. Wolverton* and *T. H. Purdy*, for the appellant.

If the conversation had occurred about the amount, it would naturally have led to the discovery of the alleged error.

If there was a mistake on the part of the deputy who drew the bond, a court of equity could not reform it merely to meet the intention of the Court, nor the intention of the deputy, nor to meet the intention of the principal, but it must be reformed to meet the intention of all the parties who have any liability in it, and if there was no certain and

[Clement's Appeal.]

positive agreement of intention which was defeated by the alleged mistake, then the bond cannot be reformed at all.

The evidence that the surety intended something different from the plain reading of his obligation, must be so clear as to leave no shadow of a doubt, before a Court of equity can reform a bond so as to hold him to a greater liability than the plainly expressed wording of the bond: Moser v. Libenguth, 2 Rawle, 428; Stine v. Sherk, 1 W. & S., 195; Schettinger v. Hopple, 3 Grant, 54; Insurance Co. v. Union Canal Co., Brightly, 48; Zentmyer v. Mittower, 5 Barr, 403; Kenny v. McClellan, 7 Phila., 655; Leggett v. Humphreys, 21 Howard, 66; Cooper v. Insurance Co., 14 Wright, 299; Withers v. Livezy, 1 W. & S., 433; Stub v. Stub, 3 Barr, 254; Woods v. Wallace, 10 Harris, 176; Kennedy v. Plank Road Co., 1 Casey, 224; Rogers v. Smith, 4 Barr, 93; Commonwealth v. Forney, 3 W. & S., 358; Stub v. Deck, 4 Casey, 497; Allison v. Kurtz, 2 Watts, 185; Fulton v. Hood, 10 Casey, 365.

The law is well settled that equity will not reform an instrument unless the mistake was mutual, and then only to make it what the parties intended it should be. To enlarge the amount of the bond against his understanding of it, and against the plain reading of it, in the absence of ambiguity or fraud, would be to establish a doctrine so dangerous as to render every man unsafe in signing any written obligation.

*George B. Reimensnyder*, for the appellee.

The settled law of Pennsylvania is, that a written instrument may be reformed by parol evidence of what passed between the parties at or about the time of its execution, in cases of fraud, accident, mistake, or trust: Renshaw v. Gans, 7 Barr, 117, 118; Snyder v. May & Klose, 7 Harris, 235; Rearich v. Swinehart, 1 Jones, 233–238; Lauchner v. Rex, 8 Harris, 464; Christ v. Dieffenbach et al., 1 S. & R., 464; Bollinger v. Eckert, 16 S. & R., 422; Gower v. Sterner, 2 Whar., 74; Moliere v. The Penna. Fire Ins. Co., 5 Rawle, 342–346; Hamilton v. Asslin, 14 S. & R., 448; Chew v. Gillespie, 56 Pa., 309–314; Martin & Monroe v. Berens, 67 Pa., 459; Coughenour v. Suhre, 71 Pa., 462; Russell's Appeal, 75 Pa., 269; Church v. Moore, 10 Barr, 280; Gump's Appeal, 65 Penna. State, 476.

Courts of equity will reform written contracts so as to afford relief, where there is no adequate remedy at law, against a surety as well as against the principal: Brandt on Suretyship and Guaranty, sec. 118; Olmsted v. Olmsted, 38 Conn., 309; Kerney's Admr. v. Kerney's Heirs, 6 Leigh (Va.), 478; East India Co. v. Boddam, 9 Vesey, 464;

Wiser *v.* Blachly, 1 Johns. Chan., 607; Berg *v.* Radcliff, 6 Johns. Ch., 302–307; Rawstone *v.* Parr, 3 Russell,.424; S. C., Id., 539; Crosby *v.* Middleton, Prec. Chan., 309; Brooks *v.* Brooke, 12 Gill *v.* Johns. (Md.), 306; Prior *v.* Williams, 3 Abb. N. Y. App. Rep., 624; Besore *v.* Potter, 12 S. & R., 154; Story's Eq. Jur., vol. i., sec. 164, note 6, sec. 164 a.

MAY 8TH, 1882.—PER CURIAM: That a bond to secure the amount of a sale by order of the Orphans' Court by an administrator in the penalty of eight dollars was a clerical error was manifest on its face. There was evidence that the appellant was told it was to be eight hundred dollars. In such a case, supported by the *prima facies* of the mistake, we need hardly demand such indubitable proof of mistake as is required in ordinary cases.

Decree affirmed and appeal dismissed at the costs of the appellant.